FREDERICK H. KILPATRICK, Plaintiff, *v.* ARGYLE COMPANY, INC., and Others, Defendants, Impleaded with HANS FROHMAN and Others, Respondents.

STOCKBRIDGE APARTMENTS, INC., Purchaser, Appellant.

First Department, January 20, 1922.

Mortgages — foreclosure — tenants in apartment house must surrender possession to purchaser on foreclosure — Rent Laws of 1920 not applicable — Code of Civil Procedure, § 1675, not repealed or superseded by Rent Laws — Rent Laws strictly construed — order in nature of writ of assistance proper to give possession to purchaser — collusion between landlord and purchaser could have been pleaded — collusion not shown — tenants in contempt for failure to obey foreclosure decree — denial of application for order in nature of writ of assistance abuse of discretion.

The Rent Laws of 1920, which were passed as emergency legislation under the exercise of the police power of the State and must, therefore, be construed strictly, constitute no defense to an application made by the purchaser on foreclosure of an apartment house in possession of tenants for an order in the nature of a writ of assistance directing the sheriff to put the purchaser in possession of the mortgaged premises and to punish the occupants thereof for their refusal to yield up such possession.

Said Rent Laws did not repeal or suspend section 1675 of the Code of Civil Procedure providing for the enforcement of a judgment in foreclosure proceedings by an order in the nature of a writ of assistance.

It is the practice to embody in the decree of foreclosure a direction that the purchaser be let into possession, and, where there is such a direction and a refusal by the party in possession to move out a writ of assistance will issue as of course on motion without notice.

If there had been any collusion between the purchaser and the landlord for the purpose of evicting the tenants in violation of the Rent Laws the tenants could plead collusion and state their rights to the court; but there was no evidence of any collusion.

The judgment in foreclosure, to which the tenants were parties, provided that the purchaser was to be let into possession of the premises and their refusal to comply with that judgment makes them guilty of contempt of court for which they should be punished.

Under the circumstances the refusal of the court to grant the order in the nature of a writ of assistance to put the purchaser in possession was an abuse of discretion.

APPEAL by Stockbridge Apartments, Inc., the purchaser at a foreclosure sale in the above-entitled action, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of July, 1921, denying its application for an order in the nature of a writ of assistance directing the sheriff to put the purchaser in possession of the mortgaged premises and to punish the occupants thereof for their refusal to yield up such possession, and also an appeal from an order entered in said clerk's office on the 19th day of October, 1921, denying its motion to punish the respondents as and for a contempt of court for their failure to deliver possession of the apartments in the said mortgaged premises occupied by them.

*Walter P. Vining* [*Ralph Stout* of counsel], for the appellant.

*Jules H. Baer*, for the respondents Bang and others.

*Franklin Bien*, for the respondent Frohman.

GREENBAUM, J.:

The facts upon which the determination of these appeals depend being substantially the same, the two appeals will be considered together.

The premises which were the subject of the foreclosure consist of a six-story, elevator apartment house, known as the " Stockbridge," situated at 603–605 West One Hundred and Thirty-eighth street, borough of Manhattan, city of New York. The Stockbridge Apartments, Inc., is a corporation organized under the Business Corporations Law to acquire and hold said premises. It is alleged by the moving party that the purpose of

the corporation was and is to effect a tenant ownership on the co-operative plan of the premises by eventually having all its capital stock issued to the tenant-owners, who were to receive leases from said corporation of apartments therein.

The judgment of foreclosure and sale was entered March 16, 1921, and the premises were knocked down at a sale on April 14, 1921, to one Melervey, who is now the president of the Stockbridge Apartments, Inc., who assigned his bid to that corporation, which thereafter and on or about the 2d of May, 1921, received a deed from the referee, which was duly recorded. The referee's report of sale was confirmed on May 16, 1921. The judgment of foreclosure was in the customary form and provided " that the purchaser or purchasers at such sale be let into possession of the premises sold to them on production of the referee's deed or deeds of said premises," and further provided that the defendants, who were the respondent tenants, " are forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in said mortgaged premises and each and every part thereof." It also appears without contradiction that the respondent tenants were duly notified of the appellant's purchase of the premises, and that the purchaser would require possession during the month of May; it also appears that each of them was served with a certified copy of the judgment of foreclosure and of the order confirming the referee's report, and that a certified copy of the referee's report of sale was served upon each of them.

Some of the respondents expressly admit that their leases were cut off by the foreclosure and that they have no " right, claim, lien, title, interest or equity of redemption in the said premises," and there is no claim on the part of the remaining respondents that they have any interest in the premises excepting such as they may be entitled to by reason of the so-called 1920 Rent Laws.

The position of the respondents in the matter is that they tried diligently to find other suitable quarters in which to move but could not find any, and that under the Rent Laws they could not be evicted because of the housing emergency which prevented them from finding suitable apartments. The rentals paid by the various respondents under their former leases in the Stockbridge Apartments ranged from $57.50 to

$97.50 per month. Although the respondents claim in a general way that they were unable to find suitable quarters in which to live, there is nothing said about what they did in seeking apartments and where they sought for them, and they do not describe what if any apartments were available and in what respects they were not suitable. On the other hand, appellants submit affidavits of the result of their inquiries at a number of apartment houses within a radius of six blocks of the Stockbridge Apartments, in which there were tenant apartments of five, six and seven rooms with the right to immediate possession at rentals varying from $75 to $140 per month, giving details of the whereabouts of each apartment found to be vacant and a further list of vacant apartments is also submitted within the area bounded by One Hundred and Forty-fourth street on the north, One Hundred and Thirty-sixth street on the south, Riverside Drive on the west and Amsterdam avenue on the east, which it is alleged were similarly equipped to the premises occupied by the respondents and rentals of each of these apartments ranging from $100 to $175 per month.

Although it is asserted that the foreclosure was a ·collusive one, there is no evidence of collusion given by respondents, and, on the other hand, the replying affidavits completely rebut the idea of collusion.

The question in this case is whether or not the 1920 rent legislation justified the respondents in refusing to obey the judgment in foreclosure, which in express terms provided that the purchaser " be let into possession of the premises * * * on production of the referee's deed." So far as the determination of this appeal is concerned the facts are practically undisputed.

Section 1675 of the Code of Civil Procedure provides, in actions affecting real property, that " Where a judgment, in an action specified in this title, allots to any person a distinct parcel of real property, * * * it may also, except in a case where it is expressly prescribed in this act that the judgment may be enforced by execution, direct the delivery of the possession of the property to the person entitled thereto. If a party, or his representative or successor, who is bound by the judgment, withholds possession from the person thus

declared to be entitled thereto, the court, besides punishing the disobedience as a contempt, may, in its discretion, by order, require the sheriff to put that person into possession. Such an order must be executed, as if it was an execution for the delivery of the possession of the property."

The Rent Laws of 1920 contain' no provision repealing or suspending section 1675 of the Code of Civil Procedure, and there is no reference made therein to any limitations upon the forms of judgments in foreclosure sale actions, nor is there any suggestion in these laws that the equitable powers of the court were thereby in any manner to be affected. On the other hand, the 1920 Rent Laws in express terms amended and suspended the legal remedies of dispossess and ejectment. (See *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429; *Guttag* v. *Shatzkin*, Id. 647; *Marcus Brown Co.* v. *Feldman*, 256 U. S. 170.) The Rent Laws were passed as emergency legislation under the exercise of the police power of the State. Such statutes must be strictly construed. (*Matter of Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 id. 377; *Wynehamer* v. *People*, 13 id. 378; *People* v. *Sommer*, 55 Misc. Rep. 55, 58.)

The judgment in the foreclosure to which the respondents were parties provided, as has already been shown, in express terms that the purchaser or purchasers at such sale were to be " let into possession of the premises sold to them on production of the referee's deed or deeds of said premises." Here we have a mandate of the court which not only forever barred respondents from an interest or claim in the mortgaged premises, but which required them to deliver up possession of the premises occupied by them upon production of the referee's deed. Instead of complying with the decree of the court, the respondents ignored its provisions, justifying their action by reason of the Rent Laws.

In the case of *Ketchum* v. *Edwards* (153 N. Y. 534, 538, 539) the court said: " It is, of course, not subject to debate that the order of a court having jurisdiction must be implicitly obeyed, however erroneous it may be, and that it is no answer for one called upon to answer for disobedience that the order or judgment was broader than the facts warranted, or gave relief beyond what was demanded or what the court, upon the facts, was justified in awarding. The interest in maintaining

respect for the action of courts, and of orderly jurisprudence, forbids that litigants should be permitted, under plea of hardship or injustice, real or pretended, to nullify or set at nought orders or decrees, however improvidently made, even if it may seem certain that the court acted in granting them under misapprehension or mistake. [*People* v. *Sturtevant*, 9 N. Y. 263; *Erie R. Co.* v. *Ramsey*, 45 id. 637; *Koehler* v. *Farmers, etc., Nat. Bank*, 117 id. 661; *People ex rel. Mayor, etc.*, v. *Pendleton*, 64 id. 622; Hughes on Injunc. §§ 1416, 1417; Beach on Injunc. 264.]"

The purpose and history of the writ of assistance are concisely stated in *Connor* v. *Schaeffel* (25 Abb. N. C. 344, 345) as follows: " The writ of assistance, so far as foreclosures are concerned, is an old chancery writ, which exists independent of the statute (4 Wait's Pr. 196). It may be had to enforce any judgment or order awarding the possession of real property other than the common judgment in a direct action for land (2 Tillinghast & Shearman Pr. [2d ed.] 849, and see also *Lynde* v. *O'Donnell*, 12 Abb. Pr. 286; 21 How. Pr. 34; *N. Y. Life Insurance Co.* v. *Rand*, 8 id. 35, 352). A writ of assistance is, in ordinary cases, the process for giving possession of land under an adjudication and will be granted upon the sale being confirmed, and proof that the purchaser has received a deed of conveyance from the master, which has been shown to the party in possession accompanied by a demand of possession, which has been refused (1 Barb. Ch. Pr. 531)."

The practice has long been recognized in Courts of Chancery in this State, and followed in Courts of Equity in foreclosure actions affecting real property, to embody in the decree a direction that the purchaser be let into possession, and, where there was such a direction and a refusal by the party in possession, to move out a writ of assistance issued as of course on motion without notice. (*New York Life Ins. & Trust Co.* v. *Rand*, 8 How. Pr. 35, 37, 38.)

It is urged in behalf of the respondents that landlords desiring to evade the provisions of the Rent Laws would be encouraged to procure collusive actions in foreclosure, and obtain possession of premises through the medium of a writ of assistance. Such a plea deserves scant consideration. If there is reason to think that foreclosure proceedings were

collusively undertaken for the purpose of accomplishing an eviction of tenants, the latter would be in a position to plead collusion and submit their rights to the court. But in this case, as heretofore stated, there is no evidence of collusion. It seems to us, upon the state of facts here appearing, that the respondents should have been adjudged guilty of contempt of court in disobeying the decree of the court.

With respect to the appeal denying an order in the nature of a writ of assistance, it is urged in behalf of the respondents that such an order is purely discretionary. That the court's issuance of such a writ is discretionary cannot be gainsaid. The only question, however, is whether the discretion may be arbitrarily exercised.

There seems to be no alternative but to reverse the orders appealed from, with ten dollars costs and disbursements, and to grant the motion to punish for contempt and the motion for an order requiring the sheriff to put appellant into possession, upon terms to be settled on notice.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, motions to punish for contempt and to require sheriff to put appellant into possession granted, upon terms to be settled on notice. Settle orders on notice.