OPINION OF THE COURT
Joseph Harris, J.
The court-appointed receiver, in the instant foreclosure *341 action, moves for an order directing the plaintiff to turn over, to the receiver, for payment of City of Albany property taxes due January 31, 1992, all funds held by the plaintiff in a certain tax escrow account, established under the subject mortgages. The motion of the receiver is adopted, in all respects, by the defendants.
THE FACTS
An action to foreclose various mortgages on commercial property located at 11 North Pearl Street, Albany, New York, was commenced on September 15, 1991. On October 15, 1991, pursuant to the terms of the mortgages and at the plaintiff’s request, the court appointed L. Michael Mackey, Esq., as receiver. There is presently due and owing on the property, City of Albany property tax in the sum of $81,649.74. In the event this tax is not paid on or before January 31, 1992, the city will assess an initial 4% penalty, to be followed by additional penalties of 1% per month, until the outstanding taxes have been paid. The receiver, not being in possession of sufficient funds to pay the outstanding tax liability, has requested that plaintiff pay over $41,563.97 in tax escrow moneys, to be applied towards said tax.[1] Plaintiff has refused, thereby prompting the instant application.
The movants contend that the plaintiff is obligated, under the terms of the mortgage agreements, to apply the moneys held in the tax escrow account towards the outstanding property tax liability. Plaintiff contends that the receiver lacks authority to compel turnover of the tax escrow account, in that the escrow moneys were collected and deposited prior to the receiver’s qualification, that the relief sought here is beyond the duties and authority of a receiver, and that the mortgage agreements do not require the mortgagee to apply the tax escrow towards the outstanding property taxes where an action to foreclose the mortgages has been commenced.
Inasmuch as the plaintiff concedes that the "rights and obligations of Trustee and the * * * defendants as and to the tax escrow fund are governed by the written commercial loan agreements between the parties” and the defendants have adopted the receiver’s application in its entirety, the court need not address plaintiff’s challenge to the receiver’s author *342 ity. Thus, resolution of this application rests solely upon the interpretation and application of the mortgage agreements.[2]
THE LAW
Contrary to the plaintiff’s position, the court finds that the mortgage agreements expressly require the plaintiff to apply the tax escrow to outstanding tax liabilities, until such time as the tax foreclosure sale is consummated and the mortgagors’ equity of redemption is cut off.
Under firmly established precedent, where, as here, a contract’s language is unambiguous and the words are plain and clear, conveying a distinct idea, interpretation of the contract and the obligations of the parties thereto are questions of law, not fact, and effect must be given to the intent of the parties as reflected by the express language of the agreement. (Chimart Assocs. v Paul, 66 NY2d 570; Tietelbaum Holdings v Gold, 48 NY2d 51; Briarwood Towers 85th Co. v Guterman, 136 AD2d 456; Quinn v Buffa, 97 AD2d 752.)
With respect to the tax escrow account, the instant mortgages provide as follows: "Mortgagor shall deposit with Mortgagee on the first day of each month, a sum equivalent to one-twelfth of the annual taxes assessed and annual installments of assessments levied against said premises, plus any tax accrual deficiency as periodically estimated by Mortgagee, on an accrual basis to be applied by Mortgagee toward the payment of such taxes and assessments * * * In the event of foreclosure of this Mortgage such deposits may, in the discretion of Mortgagee, be applied toward the indebtedness to the extent they have not otherwise been used” (emphasis added).
It is clear from this language that the tax escrow must be "applied by [the] Mortgagee toward the payment of [the] taxes” on the property, absent the occurrence of an event relieving plaintiff of this obligation. Only in one event relevant here does the mortgage authorize the mortgagee to apply tax escrow moneys towards the indebtedness secured by the mortgage: "in the event of foreclosure”. This event has not occurred and plaintiff is thus required to apply the tax escrow for the intended purpose, the payment of the outstanding tax liability.
*343 The term "in the event of foreclosure” is not coterminous with the "commencement of a foreclosure action”. Rather, the "event of foreclosure” refers to that singular event, concluding an action to foreclose a mortgage, which irrevocably cuts off the mortgagor’s rights, including the equity of redemption — to wit, the foreclosure sale. (Harlem Sav. Bank v Cooper, 199 Misc 1110; Schnitzer v Fruehauf Trailer Co., 283 App Div 421; Citibank v Press Realty Corp., 139 Misc 2d 558; Jamaica Sav. Bank v Cohan, 38 AD2d 841; Kilpatric v Argyle Co., 199 App Div 753.) A default may give rise to a foreclosure action, but it does not by itself a "foreclosure” make.
This interpretation is consistent with plaintiff’s utilization of these terms in other sections of the mortgage document. For example, in paragraph 2 of the mortgage, governing hazard and liability insurance, the agreement provides that "in the event of a foreclosure of this Mortgage, the purchaser of said premises shall succeed to all the rights of Mortgagor, including any right to unearned premiums, in and to all policies of insurance required to be assigned and delivered to Mortgagee, pursuant to the provisions of this paragraph.” Consistent with the court’s interpretation, it is clear that plaintiff utilizes the phrase "in the event of foreclosure” in paragraph No. 2 of the mortgage to refer to the foreclosure sale, which bars the mortgagor’s equity of redemption.
At this juncture, the "event of foreclosure” has not yet occurred; the defendants may exercise their equity of redemption and pay off the mortgage; or it may appear down the line in the lawsuit that the plaintiff is not entitled to "foreclosure”.
Accordingly, plaintiff is required, under the present legal status of this case, to apply all tax escrow moneys towards the outstanding property tax liability.
For the foregoing reasons, defendants’ motion is granted to the extent that plaintiff is directed to pay over all tax escrow moneys held under the subject mortgages to the City of Albany, on or before the 31st day of January 1992. The plaintiff is further directed to make arrangements with the receiver, L. Michael Mackey, so that simultaneously, with the plaintiff’s tender of tax escrow moneys to the City of Albany, the receiver shall tender the balance of the taxes owed to the city, from receivership funds.

. Defendants will make up the difference, so if the relief sought here is granted, the tax will be paid in full.

. While diverse mortgage agreements affect the subject property, the substantive terms of these agreements are identical.