974 F.2d 1020
 FRANK B. HALL & CO., INC., and Frank B. Hall Insurance
Brokers, Inc., Appellants,
v.
ALEXANDER & ALEXANDER, INC., Appellee.
J. Philip STARR; Danny O. Rose; Frank B. Hall & Co., Inc., Appellees,
v.
ALEXANDER & ALEXANDER, INC., Appellant.
 Nos. 91-2305, 91-2308.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1991.
Decided Sept. 10, 1992.
 
 Daniel M. Dibble, Kansas City, Mo., argued (Kathryn H. Vratil, Thomas H. Dahlk, Sandra L. Dougherty, Omaha, Neb. and Blair C. Fensterstock, New York City, on brief), for appellants.
 Arthur J. Schwab, Pittsburgh, Pa., argued (Michael G. Gallagher, Owings Mill, Md., Russell W. Baker, Jr., Kansas City, Mo., Warren S. Zweiback, Omaha, Neb. and Arthur L. Smith, St. Louis, Mo., on brief), for appellees.
 Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 This is a consolidated appeal from the denial of preliminary injunctive relief in two separate actions involving the same settlement agreement. Frank B. Hall & Co., Inc., appeals a decision of the United States District Court for the District of Nebraska denying preliminary injunctive relief in appeal No. 91-2305. Alexander and Alexander, Inc., appeals from a decision of the United States District Court for the Western District of Missouri denying preliminary injunctive relief in appeal No. 91-2308. We affirm the decision of the District Court for the District of Nebraska and reverse and remand the decision of the District Court for the Western District of Missouri.
 
 I. BACKGROUND
 
 2
 This appeal involves the construction and interpretation of a "Settlement Agreement and Release" executed on May 23, 1990, by Frank B. Hall & Co. and Frank B. Hall Insurance Brokers, Inc. [hereinafter "Hall"], Alexander & Alexander, Inc. [hereinafter "A & A"], Joseph E. Morahan, III, Stephen M. Sanford, Tracey A. Carragher, Barbara Stern, Mark Douglas Hardy, and Michael Wolf.[1] Hall and A & A, both national insurance brokerage firms, are direct competitors in the industry. In May of 1990, A & A was involved in five lawsuits pending in various jurisdictions against Hall and current employees of Hall who had previously been employees of A & A. In each case, A & A alleged that the former A & A employee breached a noncompetition or nondisclosure covenant signed by the employee while employed by A & A. On May 23, 1990, prior to formal disposition of the five pending lawsuits, Hall, A & A, and the five former employees of A & A currently employed by Hall executed the "Settlement Agreement and Release." In addition to settling all claims arising from the conduct identified in the five pending actions, the preamble of the agreement purports to "set out certain other agreements respecting the way each of the parties shall conduct certain aspects of their business that have previously been challenged by the other party as unlawful." Settlement Agreement and Release executed May 23, 1990, at 2 [hereinafter "Settlement Agreement"].
 
 
 3
 As part of the settlement the parties agreed that "A & A and Hall shall not recruit or solicit to hire any of the others' employees ... for a two (2) year period beginning on the date this Settlement Agreement and Release is executed." Settlement Agreement at 4 p 15. In addition to barring solicitation of the other's employees, the parties agreed that "A & A and Hall shall not induce any employee that they have hired away from the other to breach any noncompetition or nonsolicitation agreement which such employee may have executed in favor of the former employer." Settlement Agreement at 5 p 16. The agreement provides liquidated damages for breach of the inducement clause:
 
 
 4
 In the event a party to this Settlement Agreement and Release (the "inducing party") induces a former employee of the other (the "noninducing party") to breach any noncompetition or nonsolicitation agreement and such breach results in the loss to the noninducing party of clients and associated premiums, commissions or fee income, the inducing party shall pay to the noninducing party a total amount equal to 150% of the actual gross commission income for that client which was earned by the noninducing party in the immediately prior year (the "liquidated damages payments"), in three equal annual installments....
 
 
 5
 Settlement Agreement at 5 p 16. The parties' agreement not to induce employee breach contained in paragraph 16 was to expire two years after the date the agreement was executed. Settlement Agreement at 5-6 p 17.
 
 
 6
 The parties also provided a mechanism in the agreement that may be termed Alternative Dispute Resolution (ADR). The agreement provides in the event that any party becomes concerned that a breach of the agreement has occurred or is likely to occur, the concerned party shall deliver written notice to the other party setting forth the basis of its concern and requesting a meeting to discuss resolution of the matter. Only if the matter is not resolved by two mandatory meetings between the parties may the complaining party take legal action. Further, legal proceedings initiated under the agreement must be litigated in the Supreme Court of the State of New York, County of New York. Settlement Agreement at 7-9 p 23.
 
 
 7
 The dispute in the present cases arose on November 19, 1990, when A & A filed an action in the District Court of Douglas County, Nebraska, against eleven individuals who are former employees of A & A and current employees of Hall seeking, inter alia, injunctive relief enforcing covenants not to compete which the employees signed while employed by A & A. See Appendix to Brief of Alexander & Alexander, Inc., vol. 1 at 211. In response, on December 17, 1990, Hall filed an action against A & A in the United States District Court for the District of Nebraska alleging that this litigation, in addition to any litigation over noncompete covenants with former employees now employed by Hall which A & A might commence in the United States within two years after execution of the agreement, constituted breach of the agreement. Hall sought an order from the district court enjoining A & A from commencing such litigation.
 
 
 8
 On March 11, 1991, while Hall's action in the District Court for the District of Nebraska was still pending, Hall, J. Philip Starr, and Danny O. Rose filed a complaint against A & A in the United States District Court for the Western District of Missouri. Starr and Rose are both former employees of A & A and current employees of Hall. In the Missouri action, Hall, Starr, and Rose sought declaratory judgment under 28 U.S.C. § 2201 adjudicating the rights and obligations of the parties under the May 23, 1990, agreement. A & A counterclaimed and moved for preliminary injunctive relief to enjoin Starr and Rose from breaching noncompetition and nonsolicitation agreements that each signed while employed by A & A.
 
 
 9
 In both actions, Hall argued that A & A's only course of action against its former employees is under the ADR provision of the agreement. Hall further argued that the exclusive remedy for breach is liquidated damages in the amount of 150% of the actual gross commission income for clients A & A loses as a result of a breach of the agreement. A & A alleged in both actions that the agreement resolves disputes only between itself and Hall, not A & A's former employees, and that the 150% liquidated damages relieves only Hall from future litigation. A & A contends that the agreement does not prevent it from commencing an action against a former employee who breaches a noncompetition or nonsolicitation covenant that the employee executed with A & A.
 
 
 10
 With regard to Hall's motion for preliminary injunctive relief to prohibit A & A from commencing litigation against former A & A employees now employed by Hall, the District Court for the District of Nebraska found that the agreement did not reach actions between A & A and its former employees. Accordingly, the District Court for the District of Nebraska denied Hall's motion for a preliminary injunction. Hall appeals the denial.
 
 
 11
 The District Court for the Western District of Missouri analyzed the issues differently. In the process of denying A & A's motion for preliminary injunction prohibiting Starr and Rose from breaching their noncompetition and nonsolicitation agreements, the District Court for the Western District of Missouri found as a matter of law that the agreement covers disputes between A & A and its former employees in addition to disputes between A & A and Hall. The only remaining issue the court considered was whether the agreement provided A & A with an adequate legal remedy such that a preliminary injunction should not issue. The district court found that the liquidated damages clause did provide A & A with an adequate legal remedy and accordingly denied the preliminary injunction. A & A appeals from the denial of preliminary injunctive relief.
 
 
 12
 These two actions have been consolidated for appeal before this court. This court has jurisdiction pursuant to 28 U.S.C. § 1992(a). For the reasons discussed below, we affirm the order of the United States District Court for the District of Nebraska and reverse the order of the United States District Court for the District of Missouri.[2]
 
 II. DISCUSSION
 
 13
 Both appeals involve the denial of preliminary injunction. It is well settled that the decision to deny preliminary injunctive relief involves consideration of "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc). "In balancing the equities no single factor is determinative." Id. We will not reverse the district court's denial of injunctive relief unless the decision below is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise. Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir.1989) (en banc); Medtronic, Inc. v. Gibbons, 684 F.2d 565, 567 (8th Cir.1982).
 
 
 14
 The District Court for the Western District of Missouri, before reaching the Dataphase balancing test, ruled as a matter of law that the agreement was intended to provide and does provide an adequate legal remedy for disputes between A & A and its former employees. Starr, et al. v. Alexander & Alexander, Inc., No. 91-0215-CV-W-5 at 5 (W.D.Mo. May 16, 1991) (order). To the extent a district court's construction of a contract relies on the contract terms and not on extrinsic evidence, its interpretation is a conclusion of law over which we have plenary review. Towers Hotel Corp. v. Rimmel, 871 F.2d 766, 770 (8th Cir.1989); American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1142 (8th Cir.1986). There is no indication that the district court considered extrinsic evidence or made findings of fact in determining the meaning of the terms of the agreement. Accordingly, we will exercise plenary review over that portion of the district court's order interpreting the agreement to apply to the dispute between A & A and its previous employees.[3]
 
 
 15
 We find that the District Court for the Western District of Missouri erred in concluding that the agreement addresses the rights of A & A with respect to its former employees currently employed by Hall. It is axiomatic that a contract must be interpreted according to the intention of the parties. J.C. Penney Co., Inc. v. 1700 Broadway Co., 104 Misc.2d 787, 429 N.Y.S.2d 369, 374 (1980).[4] Where a contract's language is unambiguous, the intent of the parties is reflected in the language and the court should discern intent from the document itself. Trustco Bank v. 11 North Pearl Assocs., 580 N.Y.S.2d 847, 849 (1992); Gillman v. O'Connell, 176 A.D.2d 305, 574 N.Y.S.2d 573, 575 (1991). Where a release is signed in a commercial context by parties in roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if "the language of the release is clear, ... the intent of the parties [is] indicated by the language employed." Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc., 558 F.2d 1113, 1115 (2d Cir.1977) (citations omitted).
 
 
 16
 The issue before the District Court for the Western District of Missouri was whether the liquidated damages clause in the agreement provides the sole remedy when a former A & A employee breaches a noncompetition covenant executed in favor of A & A or whether A & A may, in addition, commence an action against its former employee, individually, for that breach. The district court's conclusion that the liquidated damages clause provides the exclusive remedy for A & A is simply not supported by the language of the agreement.
 
 
 17
 The May 23, 1990, agreement addresses three substantive areas of possible dispute. First, Paragraph Eighteen (18) dismisses all claims between the signatory parties current at the time of execution. This provision does not in any way address future claims which may arise between the parties. Second, Paragraph Fifteen (15) bars the parties from recruiting or soliciting the other's employees for a period of two years from the date of execution.[5] Finally, Paragraph Sixteen (16) provides that A & A and Hall shall not induce each other's former employees to breach any noncompetition or nonsolicitation covenants that the employee may have signed with his or her former employer.
 
 
 18
 The agreement also provides for enforcement of its substantive provisions. Paragraph Twenty-three (23) provides that any party concerned about a breach or imminent breach of the agreement shall invoke the ADR provisions with final resort to litigation in the Supreme Court of the State of New York. Paragraph Sixteen (16) provides liquidated damages in the event that Hall or A & A should induce a former employee of the other to breach a covenant with the former employer. Breach of the ban on inducement entitles the complaining party to liquidated damages in the amount of 150% of the gross commission income over the prior year from clients lost as a result of the breach.
 
 
 19
 The agreement does not expressly address the rights of A & A or Hall vis-a-vis their respective former or current employees who are not parties to the agreement. The agreement does not state that liquidated damages are the exclusive remedy for breach. Hall specifically recognized in the agreement that A & A uses and seeks to enforce noncompetition and nonsolicitation covenants with its employees in the ordinary course of its business. Settlement Agreement at 4 p 13. Hall will not now be heard to say that the agreement nullifies the legal effect of these wholly unrelated covenants.
 
 
 20
 Hall's argument that the parties intended the liquidated damages clause to provide the sole remedy for breach of individual noncompetition covenants stretches the language of the agreement beyond its breaking point. Hall agreed not to induce A & A's former employees to breach their individual covenants with A & A for two years. Hall argues that the 150% liquidated damages under the agreement is full payment for raiding A & A's employees and pirating A & A's client base and that A & A should have no cause of action against the signatories of individual covenants. Accepting this argument would amount to a sale of employees and clients for the price of the 150% liquidated damages. As written, the agreement evidences the desire of Hall and A & A to halt inducements to breach employment agreements, not to facilitate them. This is a damages clause, nothing more. If Hall and A & A intended to sell their employees and clients for the 150% liquidated damages, the agreement would have released their respective employees' obligations under individual covenants, not recognized their validity.
 
 
 21
 Hall admitted to the District Court for the Western District of Missouri that after Starr and Rose began working for Hall, Hall induced Starr and Rose to breach their respective noncompetition clauses with A & A. Starr, et al. v. Alexander & Alexander, Inc., No. 91-0215-CV-W-5 at 3 (W.D.Mo. May 16, 1991) (order). Hall's inducement properly falls within the settlement and should be resolved pursuant to its terms. The agreement is silent, however, on the obligations of Starr and Rose to abide by their individual covenants with A & A. It was error for the district court to rule as a matter of law that the agreement covered the dispute between A & A and Starr and Rose. Accordingly, the district court's conclusion that the agreement provides A & A with an adequate legal remedy such that a preliminary injunction should not issue is based upon an erroneous legal premise. We reverse and remand appeal No. 91-2308 to the District Court for the Western District of Missouri for a proper balancing of the Dataphase factors consistent with this opinion.
 
 
 22
 We find no abuse of discretion by the District Court for the District of Nebraska in balancing the Dataphase factors in the case before that court. The court observed that:
 
 
 23
 [i]n this case, as a plain reading of the settlement agreement and release executed between the parties does not in any way discharge actions or claims A & A has against its former employees who breached nonsolicitation or noncompetition agreements executed in favor of A & A, it appears that Hall has little probability of success on the merits of its claims relating to breach of the settlement agreement. Further, the Court finds that the threat of irreparable injury to Hall for its lost "window of opportunity" does not outweigh the injury that would result to A & A if it were prohibited from filing suit against those former employees who breach nonsolicitation or noncompetition agreements signed in favor of A & A. In addition, the public interest does not favor granting an injunction in this case as the parties would be forced to conduct themselves in a manner which is contrary to the express written terms of their agreement.
 
 
 24
 Frank B. Hall & Co. Inc. v. Alexander & Alexander, Inc., CV. 90-0-836, memorandum op. at 17, 1991 WL 424609 (D.Neb. April 19, 1991). We find ample support in the record for each of the district court's findings.
 
 
 25
 Hall argues that the district court's finding that the threat of irreparable injury to Hall does not outweigh the injury to A & A if it were prohibited from filing suit against its former employees for breach of their covenants is clearly erroneous. This argument misses the point. The only harm to Hall from A & A pursuing its contractual rights against former employees is loss of the two-year opportunity to pirate A & A's business at a cost of 150% of the commissions for one year. As we discussed above, this opportunity is the result of a misinterpretation of the agreement. The district court's finding that this illusory harm to Hall did not outweigh the harm to A & A from deprivation of its contractual rights if the preliminary injunction should issue is not clearly erroneous.
 
 
 26
 Hall further argues that the district court erred in finding that the public interest does not favor granting this injunction. According to Hall, preliminary injunctive relief in this case would advance the public interest by reducing litigation, promoting competition, and encouraging Alternative Dispute Resolution. We find, in accord with the district court, that however noble these goals may be, the public interest does not favor forcing parties to a agreement to conduct themselves in a manner directly contrary to the express terms of the agreement.
 
 
 27
 The District Court for the District of Nebraska duly considered and weighed each of the four Dataphase factors in denying Hall's motion for preliminary injunctive relief. We have considered Hall's arguments for error and find them without merit. Accordingly, we affirm the decision of the District Court of Nebraska in appeal No. 91-2305.
 
 III. CONCLUSION
 
 28
 For the reasons stated above, the decision of the District Court for the District of Nebraska in appeal No. 91-2305 is affirmed and the decision of the District Court for the Western District of Missouri in appeal No. 91-2308 is reversed and remanded.
 
 
 29
 HEANEY, Senior Circuit Judge, dissenting.
 
 
 30
 I would reverse the decision of the district court for the District of Nebraska and affirm the decision of the district court for the Western District of Missouri. I disagree with the majority's assertion that Hall's argument "stretches the language of the agreement beyond its breaking point." See supra at 1024. The fact that two district courts reached two different results suggests that this is a difficult case with no clear outcome. On balance, however, I believe that Hall's suggested interpretation of the settlement agreement is more plausible than A & A's.
 
 
 31
 It is apparent that Hall and A & A intended the agreement to resolve all disputes regarding violations of noncompetition clauses during the two-year period that the agreement was in effect. The terms of the agreement suggest that A & A knew that, despite the noncompetition clauses in their contracts, A & A employees would continue to defect to Hall. The agreement was, therefore, a means for A & A to ensure that it would be compensated for the losses it incurred as a result of these defections. The liquidated damages clause plainly was the exclusive remedy for breach of the agreement. It would be unreasonable for A & A to expect its former employees to pay damages in addition to the 150% liquidated damages that A & A would receive from Hall under the agreement.
 
 
 32
 If the employees violated state laws in defecting to Hall, then A & A would, of course, have remedy in the courts. Aside from that exception, however, I believe that A & A is limited in these cases to the remedies provided in the settlement agreement. I respectfully dissent.
 
 
 
 [1]
 Although Donald R. Bell, chairman and chief executive officer of Hall, is listed as a party to the Settlement Agreement And Release in the agreement itself, Bell is not listed as an individual executor and did not execute the agreement in his individual capacity
 
 
 [2]
 After briefing, but prior to oral argument, Hall filed a motion to impose sanctions on A & A for repeatedly referencing materials in its briefs that are not in the trial records. Hall filed its motion for sanctions after A & A moved to supplement the appendix it had previously filed by adding to it various pleadings and orders from actions extraneous to the present proceeding. We have not considered A & A's supplemental appendix in this appeal. We do not find sanctions appropriate
 
 
 [3]
 In contrast to the approach of the Missouri District Court, the Nebraska District Court used its interpretation of the plain meaning of the agreement terms merely as a factor in weighing the probability of success on the merits. The Nebraska District Court did not rule as a matter of law that the agreement does or does not apply to disputes between A & A and its former employees
 
 
 [4]
 We apply New York law to construction of the agreement pursuant to the choice of law clause in the contract. Settlement Agreement at 9 p 23(C)
 
 
 [5]
 Paragraph Fifteen (15) does not prohibit the parties from merely hiring an employee of the other without solicitation. In fact, Paragraph Fifteen (15) creates an irrebuttable presumption of no solicitation if the employee signs an affidavit attesting to the fact that he or she was not recruited or solicited away from the previous employer