[644 NYS2d 784]

Allan J. Riley, Appellant, v South Somers Development Corp. et al., Respondents, et al., Defendant.

Second Department, July 1, 1996

APPEARANCES OF COUNSEL

*Bachner, Tally, Polevoy & Misher,* New York City *(Todd S. Steckler* of counsel), for appellant.

*Wormser, Kiely, Galef & Jacobs,* White Plains *(Lawrence R. Dittelman, Lester D. Steinman* and *Daniel Pozin* of counsel), for respondents.

### OPINION OF THE COURT

SANTUCCI, J.

In this case we consider for the first time whether the tendering of a deed in lieu of foreclosure is the legal equivalent of a foreclosure. We hold that it is not.

By contract dated July 28, 1986, the plaintiff Allan J. Riley agreed to sell a 200-acre parcel of property in the Town of Somers, New York, to the defendant, 95 Kings, Inc. (hereinafter 95 Kings). The purchase price for the property was $3,500,000. Under the terms of the contract the plaintiff was to receive $2,990,000 in cash and the remainder by assumption of a first mortgage held by Jean B. Underhill in the sum of $510,000 (hereinafter the Underhill mortgage). As additional consideration for the sale, the contract provided: "[T]he purchaser agrees to convey to the seller, after a subdivision has been approved for the property, either in part or in whole, * * * a buildable lot having an area of no more than four acres". In the event that only a partial subdivision map was filed and the plaintiff failed to choose a lot from that map, and the remaining unsubdivided property was transferred, the plaintiff would be entitled to "$200,000 which shall be paid by certified or bank check".

Finally, the contract provided that the plaintiff agreed to subordinate his primary right to choose a buildable lot to an institutional mortgage lien on the subject property, provided that: "[T]he mortgage provides that upon foreclosure of said mortgage lien * * * Seller will be paid by the mortgagee the sum of $200,000 in full satisfaction of Purchaser's right to selection of the building lot or to the payment of said sum as provided in Paragraph 38 of the first rider to this contract".

Pursuant to its rights under the contract, 95 Kings assigned its interest to the defendants South Somers Development Corp. and Pinesbridge Development Co. of Westchester, Inc. (hereinafter collectively South Somers). South Somers financed this transaction with a $4,000,000 loan from Yorkville Savings and Loan Association (hereinafter Yorkville) which was secured by

a mortgage on the property. The additional money was earmarked for development.

The Yorkville mortgage included a provision requiring it to pay the plaintiff $200,000 in the event it foreclosed the mortgage: "Upon condition that the Contract provisions between you and/or your assignor and ALLAN J. RILEY, his heirs, administrators and/or assigns are subordinated to this Mortgage, the Lender will, in the event it becomes necessary to foreclose this Mortgage as against the premises pledged hereunder, pay the sum of $200,000 to Allan J. Riley, his heirs, administrators and/or assigns, in full satisfaction of his right to select a building lot as provided in said Contract".

The defendant Holmes & Kennedy, a partnership, guaranteed the Yorkville mortgage without recourse. The defendant William B. Holmes signed the guaranty as the partnership's general partner. Title closed on June 18, 1987. South Somers spent the next three years undergoing the zoning and environmental process necessary to develop the property.

By April 1992, the Resolution Trust Corporation (hereinafter RTC) had become the receiver for the then insolvent Yorkville. The RTC commenced a foreclosure action against South Somers. During the pendency of the foreclosure action, the defendant C.J.C. Associates (hereinafter CJC) entered into an agreement pursuant to which CJC agreed to purchase all of the RTC's interest in the Yorkville and Underhill mortgages. At around the same time, CJC commenced negotiations with South Somers to acquire title to the property. Pursuant to a purchase agreement between CJC and South Somers dated September 10, 1992, South Somers agreed to transfer the fee ownership of the property to CJC by deed in lieu of foreclosure. The purchase agreement was conditioned upon and required South Somers to satisfy and discharge any and all liens and judgments on the property, other than the interests of Riley under the contract of sale.

Pursuant to the terms of an Assignment Agreement entered into on October 5, 1992, CJC purchased the Yorkville and the Underhill mortgages from the RTC for $800,000. Schedule C-2 to that agreement specifically recognizes the "option held by Alan J. Riley, per Agreement in Liber 8872 cp 210". Shortly thereafter, by deed in lieu of foreclosure, South Somers transferred ownership of the property to CJC. A provision in that deed expressly noted the encumbrances of the mortgages and prevented them from merging into the deed: "[I]t being the intention of the parties that the aforementioned mortgages

shall not merge into the fee interest conveyed hereby, but that such mortgages shall remain as good and valid mortgages, separate and apart from any other interest of the party of the second part [CJC] in the fee". The RTC foreclosure action was then discontinued in a stipulation executed in December 1992.

In July 1993, the plaintiff commenced the instant action alleging that the defendants breached the reconveyance agreements. The plaintiff also alleged that the defendants breached the terms of those agreements by not paying him the $200,000 "upon the default of the Mortgage by the then owners of the property". The plaintiff sought specific performance of the agreement and $200,000 in damages. The defendants answered, *inter alia,* that neither a subdivision map had been filed nor had there been a foreclosure—the events which would trigger plaintiff's rights to reconveyance or to the $200,000 payment. Thereafter, the defendants moved for summary judgment based upon this ground, that the condition precedent of foreclosure had not yet taken place and thus the plaintiff's complaint failed to state a cause of action.

By order entered August 12, 1994, the trial court granted the defendants' motion for summary judgment. In pertinent part the court stated: "No subdivision map has been filed. Plaintiff may not rely on the provisions regarding subdivision to sustain his claim. Nor has there been a foreclosure. The commencement of a foreclosure action is not a foreclosure. Nor is the delivery of a deed in lieu of foreclosure a foreclosure [citation omitted]. None of the conditions precedent to plaintiff's claim ripening have occurred. His action is premature". We affirm.

It is clear that only the occurrence of either of two events would have triggered the plaintiff's rights under the agreement to reconveyance of a buildable lot or payment of $200,000. These events were the filing and approval of a subdivision map, or a foreclosure. There is no dispute that the filing of a subdivision map never took place. Thus, the plaintiff's rights were dependent upon the happening of the second event, that is, a foreclosure of the property.

In the plaintiff's opinion, the tendering of the deed was the equivalent of a foreclosure which terminated any rights the mortgagor might have. However, contrary to the plaintiff's contentions, a foreclosure did not occur. In fact, the tendering of a deed in lieu of foreclosure does not necessarily amount to a defense to foreclosure *(see, Albany Sav. Bank v Novak,* 151 Misc 2d 956, 957; *see also,* 3A Warren's Weed, New York Real Property, Mortgage Foreclosure § 7.31 [4th ed]).

In the case of *Trustco Bank v 11 N. Pearl Assocs.* (153 Misc 2d 340), a foreclosure action, the dispute was over how funds in a tax escrow account could be applied. Under the terms of the mortgage, " '[i]n the event of foreclosure' ", the funds could be applied to the indebtedness *(supra,* at 342). The Supreme Court first noted that where the language of a contract is unambiguous, its interpretation is a matter of law "and effect must be given to the intent of the parties as reflected by the express language of the agreement" *(Trustco Bank v 11 N. Pearl Assocs., supra,* at 342, citing *Chimart Assocs. v Paul,* 66 NY2d 570; *Teitelbaum Holdings v Gold,* 48 NY2d 51). The court then analyzed the meaning of foreclosure: "The term 'in the event of foreclosure' is not coterminous with the 'commencement of a foreclosure action'. Rather, the 'event of foreclosure' refers to that singular event, concluding an action to foreclose a mortgage, which irrevocably cuts off the mortgagor's rights, including the equity of redemption—to wit, the foreclosure sale [citations omitted]. A default may give rise to a foreclosure action, but it does not by itself a 'foreclosure' make" *(Trustco Bank v 11 N. Pearl Assocs., supra,* at 343).

Nor did the delivery of the deed to CJC merge with the Yorkville mortgage it now holds. The plaintiff contends that under a merger the mortgage would have extinguished and, like a foreclosure, would trigger the plaintiff's payment rights. However, it is expressly stated in the deed in lieu of foreclosure delivered to CJC that the intent of the parties is that no merger shall take place. "[A]n express provision in a deed given in lieu of foreclosure that the deed shall not merge with the mortgage, prevents a merger" (78 NY Jur 2d, Mortgages, § 321, at 162-163, citing *American Sav. & Loan Assn. v Eidelberg,* 54 Misc 2d 668).

Moreover, equity disfavors merger *(see, Jemzura v Jemzura,* 36 NY2d 496, 502). Nor does equity demand that a merger be declared. The defendants here explicitly recognized the plaintiff's rights, and they have not attempted some subterfuge to defeat them *(compare, Cambridge Factors v Thompson,* 215 AD2d 427—where this Court affirmed the trial court's order merging a mortgage into the fee because the defendant "held title to the property under one name and held the first mortgage in the name of a sham corporation with the apparent purpose of perpetrating a fraud upon the plaintiff, the holder of a second mortgage").

Although the plaintiff complains that the RTC or South Somers failed to notify him that it instituted a foreclosure on the

mortgage, nothing in any of the provisions required that notice be given to the plaintiff of a pending foreclosure action. The plaintiff's complaint actually appears to be that he has not received his building lot or his $200,000 within a certain time. However, the plaintiff could have easily included a term in the original contract of sale requiring the payment in the event that neither foreclosure nor the filing of a subdivision map occurred within a certain time.

Accordingly, the Supreme Court properly granted the defendants' motion for summary judgment.

BALLETTA, J. P., KRAUSMAN and FLORIO, JJ., concur.

Ordered that the order is affirmed, with one bill of costs.