**B & D LAND AND LIVESTOCK CO.,** an Iowa Corporation, Plaintiff,

v.

**Ann VENEMAN, Secretary of the United States Department of Agriculture, Defendant.**

No. C 02–3051–MWB.

United States District Court, N.D. Iowa, Central Division.

Nov. 15, 2002.

Thomas A. Lawler, Lawler & Swanson, PLC, Parkersburg, IA, for plaintiff.

Martha A. Fagg, U.S. Attorney's Office, Sioux City, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION .................................................. 898
 A. Factual Background ........................................ 898
 B. The Agency Determination ................................. 899
 C. The Action For Judicial Review ............................ 900
 D. The Motion For Preliminary Injunction .................... 901

II. LEGAL ANALYSIS ............................................. 902
 A. Standards For Issuance Of A Preliminary Injunction ....... 902
 B. Impediments To Injunctive Relief .......................... 903
 1. A complete bar ........................................ 903
 2. Heightened requirements .............................. 905
 C. Application Of The "Dataphase Factors" ................... 906
 1. Likelihood of success on the merits .................. 906
 a. The meaning of "likelihood of success" ........... 906
 b. B & D's likelihood of success ..................... 908
 2. Irreparable harm .................................... 910
 3. Balance of harms .................................... 911
 4. The public interest .................................. 912
 D. The Bond Requirement ..................................... 913

III. CONCLUSION ................................................ 914

This action for judicial review of a determination by the USDA that the plaintiff "converted" "wetland" in violation of the "Swampbuster" Act, 16 U.S.C. §§ 3801, 3821–24,[1] comes before the court on the

---

1. This court has considered the legal background and regulatory regime for wetlands protection under the "Swampbuster" Act in prior decisions. *See Branstad v. Glickman*, 118 F.Supp.2d 925, 927–28 (N.D.Iowa 2000) (*Branstad I*); *Branstad v. Veneman*, 145 F.Supp.2d 1011, 1014 (N.D.Iowa 2001) (*Branstad II*); *Branstad v. Veneman*, 212 F.Supp.2d 976 (N.D.Iowa 2002) (*Branstad III*). Therefore, the court will not reiterate that legal background here.

plaintiff's motion for a preliminary injunction on enforcement action by the USDA during the pendency of this court's review. Although it appears to the court that the central facts are largely undisputed, the parties focus on very different parts of the record, drawing therefrom opposite conclusions about the need for a preliminary injunction. The court must, therefore, determine the proper focus and the proper balance of threats, interests, and equities to decide whether the requested preliminary injunction should issue.

## I. INTRODUCTION

### A. Factual Background

As mentioned above, the factual background to plaintiff B & D Land and Livestock Company's motion for a preliminary injunction—and indeed, its action for judicial review—appears to be largely undisputed. Nevertheless, the court will attempt to provide here only enough factual background, and enough identification of any factual disputes, to put in context the motion for a preliminary injunction. In doing so, the court is mindful of the general rule that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *accord Henderson v. Bodine Aluminum, Inc.,* 70 F.3d 958, 962 (8th Cir.1995) (citing this statement from *Camenisch* as the "general rule" for findings of fact and conclusions of law in preliminary injunction rulings); *Circle R, Inc. v. Smithco Mfg., Inc.,* 919 F.Supp. 1272, 1289 (N.D.Iowa 1996) (applying this "general rule" to a request for a preliminary injunction in a patent case); *United States v. Barnes,* 912 F.Supp. 1187, 1190 (N.D.Iowa 1996) (applying the "general rule" of *Camenisch* to a preliminary injunction ruling on the government's request for a preliminary injunction pursuant to 18 U.S.C. § 1345 to enjoin activities of defendants who were allegedly engaged in mail fraud in violation of 18 U.S.C. § 1341). Thus, any findings of fact in this ruling, made either here or in the course of the legal analysis to follow, as well as any conclusions of law forming part of the court's determination of whether a preliminary injunction should issue in this case, are intended to be subject to this "general rule" and are not to be considered "final."

There does not appear to be any dispute that this case involves a purported wetland violation, involving "conversion" of 0.9 acres of "wetland," on Tract #1653, Section 32, Owen Township, Cerro Gordo County, Iowa. The tract in question is owned and farmed by plaintiff B & D Land and Livestock Company. The president and shareholder of B & D is Larry L. Doane. After purchasing the pertinent farmland, B & D requested that the Natural Resources Conservation Service (NRCS), which is a department of the USDA, make a certified wetland determination as to Tract #1653. The NRCS completed that wetland determination on April 27, 1998, and after a review requested by B & D, certified three areas on Tract #1653 as "wetland," designated "W," on January 20, 1999 (hereinafter, the 1999 wetland determination). B & D initiated an administrative appeal of the 1999 wetland determination, but then withdrew the administrative appeal after purportedly receiving assurances from Tony Moore, the District Conservationist of the NRCS, that B & D could remove certain "woody vegetation" from the Tract. There is no dispute that in 2000, B & D removed woody vegetation from the designated wetland on Tract #1653, plowed the entire tract, except for the designated wetland in the southeast corner of the tract, then raised corn on the tract in the calendar year 2000 and soybeans in the calendar year 2001.

## B. The Agency Determination

The agency action currently under review began in April 14, 2000, when Tony Moore, the NRCS District Conservationist, noticed that the woody vegetation had been "grubbed" from the designated wetland on Tract # 1653 while he was working on adjacent land owned by another producer.[2] By letter dated April 17, 2000, Mr. Moore notified B & D that B & D had "converted" wetland in violation of 16 U.S.C. § 3821–24 on 0.9 acres of Tract # 1653 "by grubbing of trees and shrubs on this wetland area." *See* Administrative Record at 42 (letter from Mr. Moore), *see also id.* at 45–46 ("Highly Erodible Land and Wetland Conservation Determination"). B & D appealed this preliminary determination, contending that the shrubs and woody vegetation were removed with a field cultivator, not by a bulldozer, but Mr. Moore upheld his preliminary determination upon review. Therefore, B & D sought review of the wetland "conversion" determination by the Farm Service Agency (FSA) County Committee, another department of the USDA.

In the first round of B & D's administrative appeal, the FSA County Committee determined that there was merit to the appeal and asked the NRCS State Conservationist to review the file. However, the State Conservationist, Leroy Brown, notified the Director of the FSA County Committee on July 30, 2001, that the file had been reviewed and that "[t]he administrative record has ample technical documentation per current technical federal wetland determination methodology that the site has wetland and the manipulation in 2000 caused the site to meet converted wetland criteria." Administrative Record at 205. Specifically, the State Conserva-

tionist concluded that "[t]he 0.9 acres of CW + 2000 determination is correct per Federal Wetland Delineation Methodology." *Id.*

B & D next appealed the determination that it had "converted" wetland to the USDA's National Appeals Division (NAD). A NAD Hearing Officer held an evidentiary hearing on December 6, 2001, at Mason City, Iowa, at which B & D presented evidence, but no one appeared on behalf of the agency. Instead, the USDA submitted a written statement in support of its position. On January 18, 2002, the Hearing Officer issued an appeal determination in which he also concluded that B & D had converted a wetland by removing woody vegetation. Although the Hearing Officer found that the NRCS District Conservationist had told B & D's president that he could remove certain woody vegetation on Tract # 1653, the Hearing Officer determined that the permission was for woody vegetation other than that in the designated wetland. *See* Administrative Record at 213. The Hearing Officer then concluded that "[i]n 2000 the Appellant converted the wetland (W) by removing woody vegetation from it." *Id.* The Hearing Officer next concluded that, while 7 C.F.R. § 11.9(e) grants the Director of the NAD the authority to grant equitable relief, that authority was not granted to Hearing Officers, who instead are responsible for developing the record for the Director to make a decision on equitable relief. *Id.* The Hearing Officer's specific "determination" was as follows: "The Agency's designation of a site as a converted wetland (CW + 2000) is not erroneous." *Id.*

At the final stage of its administrative appeal, B & D requested review of the

---

**2.** The parties agree that "grubbing" does not have a technical meaning in the present record. Rather, they agree that the term has its "dictionary meaning," which is "clear[ing] by digging up roots and stumps." *See, e.g.,* MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1995).

Hearing Officer's determination by the Director of NAD. On March 27, 2002, William A. Crutchfield, Acting Director of Review, NAD, issued his review, again upholding the Agency's determination. The Acting Director concluded, *inter alia*, as follows:

> On December 1, 1997, the Appellant requested a certified wetland determination on FSN 2091, tract 1653. In 1998, NRCS designated three fields on tract 1653 as wetlands and notified the Appellant of such. In April 2000, NRCS found that the Appellant had converted wetland on field UN1. The Appellant was aware of the wetland on field UN1 and removed shrubs and woody vegetation in violation of wetland provisions. The removal of the shrubs and woody vegetation converted 0.9 acres, and made production of an agricultural commodity possible. The NRCS complied with regulatory requirements in determining CW on field UN1. Substantial evidence supports the Hearing Officer's determination that the Agency did not err in its decision that the Appellant converted wetlands.

Director Review Determination, Administrative Record at 269 (¶ 3). The Acting Director also rejected B & D's contention that it had a right to a review of the 1999 wetland determination, because the Acting Director concluded that B & D had "waived the right for a review of NRCS wetland determination" by filing an administrative appeal of the determination, but then withdrawing it. *Id.* (¶ 4). The Acting Director acknowledged that 7 C.F.R. § 11.9(e) granted the Director of NAD the authority to grant equitable relief, but concluded that "[t]he circumstances of this case do not warrant equitable relief." *Id.* (¶ 5). The Acting Director also concluded that "Appellant failed to prove by a preponderance of evidence that the Agency's decision was erroneous." *Id.* at 270 (¶ 6). The Acting Director, therefore, made the following determinations: (1) that "[t]he Hearing officer's determination is upheld"; (2) that "[e]quitable relief is denied"; and (3) that his determination "concludes the administrative appeal of this case." *Id.* (Determination).

On July 19, 2002, the FSA notified B & D and Larry Doane that they were ineligible for USDA program benefits for 2000 and all subsequent program years because of the conversion of the wetland in 2000 and demanded repayment of benefits paid from 2000 to the date of the letter, or a total of $71,944.77.

## C. The Action For Judicial Review

This lawsuit for judicial review and declaratory judgment followed on July 10, 2002. In its Complaint, B & D demands judgment as follows:

A. That this Court declare that the Agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority or limitations or short of statutory right; was without observance of procedure required by law, and was unsupported by substantial evidence, all in violation of 5 U.S.C. § 706.

B. That this Court remand the matter to the Defendant with specific instructions that the Defendant determine:

1. that the removal of woody vegetation by the Plaintiff did not impair or reduce the flow and circulation of water and had a minimal effect on the wetland criteria;

2. the wetland determination of January 20, 1999, was not correct and should have been that the area was a prior converted wetland;

3. that the woody vegetation removed was shrubs, seedlings or young trees less than 5 years old; and

4. that the wetland characteristics present in 1999 returned to the property after December 23, 1985, because of lack of maintenance beyond the control of the Plaintiff.

C. That this Court find the position of the United States was not substantially justified and grant Plaintiff reasonable attorney fees pursuant to the provisions of the Equal Access to Justice Act 5 U.S.C. § 2412.

D. That this Court grants the Plaintiff costs of suit herein.

E. That the Court grants such further and other relief as this Court deems appropriate.

Complaint at 9–10. The Secretary answered B & D's Complaint on September 13, 2002, denying that B & D was entitled to the judgment requested and praying that the court, instead, dismiss the cause of action with costs to the plaintiff.

By order dated September 16, 2002, the court established a briefing schedule on the merits of B & D's Complaint. Although B & D filed its brief on the merits on October 21, 2002, the deadline for the Secretary's brief on the merits is not until sixty days after that date. Therefore, this case is not yet ready for disposition on the merits and may not be resolved for some time.

### D. The Motion For Preliminary Injunction

On September 20, 2002, shortly after filing its brief on the merits, B & D filed the motion for preliminary injunction presently before the court. In its motion, B & D asserts that, as a result of enforcement action by the USDA—in the form of the July 19, 2002, letter from the Executive Director of the County FSA notifying the plaintiff that it is ineligible for USDA benefits based on the converted wetland determination and demanding repayment of funds disbursed since the conversion—B & D will be put out of business, because it is unable to meet its financial obligations without federal farm program benefits and is unable to afford repayment of the previously disbursed benefits. Therefore, B & D asserts that the Agency action will cause it to suffer irreparable damage if USDA benefits are not restored and if collection action is begun on past benefits; that it has no other adequate remedy; that the harm to the USDA from a preliminary injunction is small in comparison to the harm to B & D if the preliminary injunction is not granted; and that the damage to the USDA from a preliminary injunction is less than $1,000. B & D prays that the court "preliminarily enjoin the Secretary from pursuing, instituting, continuing, or completing any and all enforcement action against the Plaintiffs [sic] on account of the matter pending in this action and further from denying the payment of any USDA benefits to the Plaintiffs [sic] on account of the matter pending in this action until such time as the preliminary injunction is dissolved or vacated." Plaintiff's Motion For Preliminary injunction at 6. B & D also filed a brief in support of its motion for a preliminary injunction.

On October 2, 2002, the Secretary filed her resistance to the motion for a preliminary injunction and a brief in support of that resistance. Subsequently, on October 23, 2002, the Secretary sought leave to file a supplemental brief to discuss and distinguish this court's *Branstad* line of cases granting preliminary injunctions in "Swampbuster" cases, *Branstad v. Glickman*, 118 F.Supp.2d 925 (N.D.Iowa 2000) (*Branstad I*), and *Branstad v. Veneman*, 145 F.Supp.2d 1011 (N.D.Iowa 2001) (*Branstad II*), as well as the decision of the Eighth Circuit Court of Appeals in *Barthel v. USDA*, 181 F.3d 934 (8th Cir. 1999). The court granted that request, and the Secretary ultimately filed her Supplemental Brief on November 4, 2002.

On November 1, 2002, this court scheduled a hearing on B & D's motion for a preliminary injunction for November 13, 2002. That hearing was eventually rescheduled as telephonic oral arguments on November 12, 2002. At the oral arguments, plaintiff B & D was represented by Thomas A. Lawler of Lawler & Swanson, P.L.C., in Parkersburg, Iowa. The Secretary of the USDA was represented by Assistant United States Attorney Martha A. Fagg of Sioux City, Iowa. The court has considered the arguments and submissions of the parties and now enters this ruling on B & D's motion for a preliminary injunction.

## II. LEGAL ANALYSIS

### A. Standards For Issuance Of A Preliminary Injunction

Just as there appears to be no substantial dispute about the factual background to this action for judicial review or the present motion for preliminary injunction, there appears to be no substantial dispute about the factors that must be considered for a preliminary injunction to issue. This court identified the pertinent factors in the *Branstad* cases, in which other producers also sought preliminary injunctions on enforcement actions by the USDA during the pendency of their actions for judicial review of the Secretary's determination that they, too, had violated the "Swampbuster" Act by "converting" "wetlands." Those standards are as follows:

> "The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Co-op., Inc. [v. Chaske],* 28 F.3d [1466,] 1472 [ (8th Cir. 1994) ].
>
> As the Eighth Circuit Court of Appeals recently explained,
>
> > The relevant factors on a motion for a preliminary injunction are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to

the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 485–86 (8th Cir.1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (en banc)). "A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion." *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir.1998) (citation omitted).

*Entergy, Ark., Inc. v. Nebraska,* 210 F.3d 887, 898 (8th Cir.2000); *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999); *Iowa Right to Life Committee, Inc. v. Williams,* 187 F.3d 963, 966 (8th Cir.1999). In accordance with the usual practice in this circuit, this court will refer to these "relevant factors" as the *"Dataphase* factors." *See, e.g., Entergy, Ark., Inc.,* 210 F.3d at 893. As the Eighth Circuit Court of Appeals has also explained,

> These factors are not a rigid formula. However, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. *See Adam–Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996).

*Bandag, Inc.,* 190 F.3d at 926; *Baker Elec. Co-op., Inc.,* 28 F.3d at 1472 ("No single factor in itself is dispositive; in

each case all of the factors must be considered to determine whether on balance, they weigh towards granting the injunction. However, a party moving for a preliminary injunction is required to show the threat of irreparable harm.") (internal quotation marks and citations omitted).

*Branstad v. Glickman,* 118 F.Supp.2d 925, 937–38 (N.D.Iowa 2000) (*Branstad I* ); *see also Branstad v. Veneman,* 145 F.Supp.2d 1011, 1022–23 (N.D.Iowa 2001) (*Branstad II* ) (quoting these standards from *Branstad I* in a separate action for judicial review involving the same producers, but a purported wetland violation on a different tract of farmland).

The court finds nothing in the parties' arguments suggesting that different factors are pertinent here to B & D's motion for a preliminary injunction. However, in this case, the Secretary does assert that there are certain impediments to granting B & D any injunctive relief at all, or failing that, that B & D's preliminary injunction seeks relief requiring B & D to meet a heightened standard of proof on the relevant factors. Therefore, the court turns to consideration of these purported impediments to preliminary injunctive relief in this case.

### B. Impediments To Injunctive Relief

#### 1. A complete bar

First, the Secretary argues that "[n]o injunction can issue against the Commodity Credit Corporation," or CCC, which is the entity actually responsible for funding federal farm program benefits. Defendant's Brief In Opposition To Motion For Preliminary Injunction (Defendant's Brief) at 4. The Secretary argues that B & D "has conspicuously failed to include the Commodity Credit Corporation as a defendant," even though it would be the entity "forced" to make payments in this case, if the court grants the requested injunction. *Id.* The Secretary argues that the bar

against enjoining action by the CCC is statutory, because 15 U.S.C. § 714b(c) provides that "no attachment, injunction, garnishment or other similar process, mesne or final, shall be issued against the Corporation or its property." The Secretary argues that "[t]here could be no clearer indication that this injunction cannot issue against the defendant and in particular against the Commodity Credit Corporation." Defendant's Brief at 5.

The Secretary makes it sound for all the world as though this argument were newly-minted for the present dispute over injunctive relief. However, far from novel, this argument has twice been presented to—and soundly rejected by—this court in rulings on applications for preliminary injunctions pending judicial review in prior "Swampbuster" cases. *See Branstad I,* 118 F.Supp.2d at 935; *Branstad II,* 145 F.Supp.2d at 1021–22. What is surprising, therefore, is not the novelty of the Secretary's present argument concerning a bar on injunctions against the CCC, but the fact that the Secretary could raise it once again without so much as confronting, discussing, or attempting to distinguish or refute this court's prior rejections in decisions that are directly on point. Although the Secretary sought leave to file a supplemental brief specifically for the purpose of addressing this court's *Branstad* line of cases—having first briefed only what the Secretary herself describes as "the black letter law applicable in this matter," *i.e.,* a generic or "canned" brief, in which the Secretary inexplicably failed to address the *Branstad* cases—she still did not address this court's rejection in *both* of the *Branstad* rulings on applications for preliminary injunctions of the present argument concerning a bar on injunctions against the CCC. Even had the Secretary's only goal in resurrecting the argument now been to preserve it for appeal, a laudable goal, the Secretary's failure to confront this court's prior rejections of the

argument is, in the court's view, not only inexplicable, but dooms the Secretary's present argument to failure, at least in this court.

In short, the court is no more impressed by the Secretary's argument on the third go around than it was on either of the prior invocations. The court rejected the identical contention in *Branstad I,* as follows:

> [T]he Secretary contends that [preliminary injunctive] relief is expressly and/or impliedly forbidden by 15 U.S.C. § 714b(c), which provides that the Commodity Credit Corporation (CCC), which funds and pays farm program benefits for which the Branstads have applied, "[m]ay sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." The Secretary contends that, while this case has not been brought directly against the CCC, the practical effect of such an injunction, if granted, would affect the CCC's operation. This argument, of course, fails on its own terms. As the Secretary concedes, the Branstads' action is not brought against the CCC and no preliminary injunction in this action would be directed to the CCC. Nor, the court concludes, would it affect the operation of the CCC. Rather, the preliminary injunction would only enjoin the USDA from declaring the Branstads to be ineligible for farm program benefits administered by the CCC until the conclusion of judicial review of USDA determinations. Thus, preliminary injunctive relief would only be directed to and have an effect upon the operations of the USDA.

*Branstad I,* 118 F.Supp.2d at 935 (footnote omitted).

In *Branstad II,* the court noted and rejected an additional argument, as follows:

The only additional argument offered here in support of the same contention regarding the anti-injunction protections for the CCC is that the Eighth Circuit Court of Appeals found in *Penner v. Madigan,* 974 F.2d 993 (8th Cir.1992), that whether or not injunctive relief would affect payments administered by the CCC, and consequently would necessarily run afoul of the anti-injunction provisions of 15 U.S.C. § 714b(c), is "a difficult issue." *See* Defendant's Response To Plaintiffs' Motion For Preliminary Injunction at 5. However, the Secretary acknowledges that, in *Penner,* the Eighth Circuit Court of Appeals declined to address this issue. *See id.* at 6.

The court is unpersuaded by *dicta* about the difficulty of an issue in a decision that did not even reach the question. *See Penner,* 974 F.2d at 996 ("Having concluded that plaintiffs' claims were properly dismissed for failure to exhaust administrative remedies, we do not reach the difficult issue whether the CCC anti-injunction statute bars their claims for declaratory relief."). Moreover, as the court suggested in *Branstad I,* the issue ultimately is not, in the court's view, a "difficult one," because it is plain that no injunction would issue against the CCC or have any affect on the CCC. Rather, only the USDA's decertification of the Branstads' eligibility for program benefits administered through the CCC would be affected. The Secretary's argument based on the anti-injunction protections for the CCC still "fails on its own terms," *see Branstad I,* 118 F.Supp.2d at 935, and the court is not deprived of subject matter jurisdiction on this ground, either.

*Branstad II,* 145 F.Supp.2d at 1021–22.

■ Again, even in her Supplemental Brief, the Secretary made no attempt to

address, let alone refute or distinguish, this court's rejection of her argument concerning the anti-injunction provisions protecting the CCC. The court finds absolutely nothing in the Secretary's present resurrection of its failed argument that requires the court to retreat from its rejection of that argument in *Branstad I* or *Branstad II,* or to find that the present circumstances are somehow distinguishable, such that the argument should nevertheless carry the day here. Thus, the anti-injunction provisions regarding the CCC neither deprive this court of subject matter jurisdiction to issue a preliminary injunction against the Secretary, nor stand as some insuperable bar to issuance of a preliminary injunction in this case.

## 2. *Heightened requirements*

In this case, the Secretary also argues that B & D seeks here the sort of preliminary injunction that is "heavily disfavored by the courts," such that it must " 'satisfy an even heavier burden of showing that, on balance, the preliminary injunction factors weigh heavily and compellingly in movant's favor before an injunction may be issued.' " Defendant's Brief at 4 (quoting *Sportsmen's Wildlife Defense Fund v. United States Dep't of Interior,* 949 F.Supp. 1510, 1523 (D.Colo.1996)). Specifically, the Secretary argues that the preliminary injunction B & D seeks here "would disturb the status quo and force action rather than enjoin any activity." *Id.* The Secretary argues that the action that would be "forced" by the present injunction is that the defendant would be forced to pay for something that the plaintiff has failed to earn, a farm program benefits check that has not been earned by compliance with wetlands regulations. *Id.* at 6. The Secretary also argues that requiring the USDA to continue to pay benefits would "essentially giv[e] the plaintiff what it seeks in the substantive lawsuit." *Id.* The Secretary boldly argues, "The USDA is not

taking away money from the plaintiff, but rather wants to stop paying it for benefits that were never earned." *Id.* While the Secretary's argument for a heightened standard of proof is cast primarily in terms of its reading of the requested preliminary injunction as requiring payment of *future* farm program benefits, the plaintiff contends that there is a threat of irreparable harm from imminent enforcement action by the USDA, in the form a demand for repayment of *past* farm program benefits, which the plaintiff contends could put it out of the farming business. Thus, the question is whether the focus of the preliminary injunction is to maintain the status quo, as B & D contends, or instead to force certain action on the part of the defendant and provide substantially all of the relief sought in the underlying action for judicial review, as the Secretary argues.

 Although the Secretary's argument is not a complete and disingenuous effort at misdirection, it nevertheless relies on a "half-truth" to such an extent that it cannot prevail. First, it is plain that the preliminary injunction sought here would prevent *two* kinds of enforcement actions by the USDA: (1) actions to recover *past* farm program benefits from 2000 to the date of its demand letter of July 19, 2002, which then totalled $71,944.77, *and* (2) actions by the USDA to decertify B & D from eligibility for *future* farm program benefits. However, neither the injunction on attempts to recover past benefits nor the injunction on decertification for future benefits would "disturb the status quo" or "force" payment of unearned benefits by the USDA. Plainly, the first form of relief would prevent the USDA from "taking away money from the plaintiff," which the USDA has stated its intent to do in the July 19, 2002, demand letter. However, this form of relief imposes only "inaction"

on the USDA and maintains the status quo—B & D would not be compelled to disgorge past benefits and the USDA would not be permitted to try to obtain them. As to the second form of injunctive relief sought here, a bar on decertification of eligibility for future benefits, the preliminary injunction "would only enjoin the USDA from declaring [B & D] to be ineligible for farm program benefits administered by the CCC until the conclusion of judicial review of USDA determinations," but "preliminary injunctive relief would only be directed to and have an effect upon the operations of the USDA," specifically, by *preventing* the USDA from taking certain action. *See Branstad I,* 118 F.Supp.2d at 935; *Branstad II,* 145 F.Supp.2d at 1021 (quoting the pertinent portion of *Branstad I*). Moreover, the court is not persuaded by the Secretary's assertion that farm program benefits must be "earned" by compliance with wetlands regulations, such that the preliminary injunction would improperly require some affirmative action on the part of the USDA to certify B & D as eligible for benefits that B & D has not "earned." To the contrary, the regulatory regime in question imposes decertification for benefits *as a penalty* for violation of wetlands regulations, *e.g.,* as a penalty for improperly "converting" wetlands. *See Branstad I,* 118 F.Supp.2d at 940 (explaining that "the goal of the Swampbuster Act [w]as preservation of wetlands, and the 'stick' for enforcement of its provision [w]as loss of federal farm program benefits if wetlands are improperly converted") (citing *Barthel,* 181 F.3d at 936; *Gunn v. USDA,* 118 F.3d 1233, 1235 (8th Cir.1997), *cert. denied,* 522 U.S. 1111, 118 S.Ct. 1042, 140 L.Ed.2d 108 (1998)); *see also id.* at 927–28 (discussing generally the regulatory regime under the Swampbuster Act). Requiring the USDA to withhold a penalty until after the conclusion of judicial review proceedings—*i.e.,* an injunction *not* to do something—simply

does not "force" the agency to do anything. Nor would the present injunction give B & D substantially all of the relief it requests in the underlying action for judicial review, because continuation of payments of farm program benefits is not the only, or the essence of, relief sought in the judicial review action. The preliminary injunction will in no way expunge any wetland violation, require the USDA to reconsider whether the 1999 wetland determination is unappealable, require the USDA to consider whether any conversion had only "minimal effects," such that it was not a violation and need not be undone, or require the USDA to reconsider whether equitable relief should be allowed to permit B & D to restore any improperly converted wetland for the minimal costs that B & D contends would be required to achieve such restoration. Therefore, B & D's motion for preliminary injunction is not subject to any heightened burden of proof that the USDA asserts is applicable.

### C. Application Of The "Dataphase Factors"

The court therefore turns, at last, to application of the *"Dataphase* factors identified above in Section II.A". Those factors, again, are the following: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest. *See, e.g., Branstad I,* 118 F.Supp.2d at 937; *Branstad II,* 145 F.Supp.2d at 1022.

#### 1. Likelihood of success on the merits

##### a. The meaning of "likelihood of success"

In *Branstad I,* this court explained the meaning of "likelihood of success on the

merits" in the context of a motion for a preliminary injunction as follows:

"[A]t the early stage of a preliminary injunction motion, the speculative nature of this particular ['likelihood of success'] inquiry militates against any wooden or mathematical application of the test. Instead, a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir.1998) (internal citations and quotation marks omitted). Thus, the court is not deciding whether the movant for a preliminary injunction will ultimately win. *Heather K. v. City of Mallard*, 887 F.Supp. 1249, 1258 (citing *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991)). Rather, as this court explained in its consideration of the *"Dataphase* factors" in *Curtis 1000, Inc. v. Youngblade*, 878 F.Supp. 1224 (N.D.Iowa 1995),

Likelihood of success on the merits requires that the movant find support for its position in governing law. In order to weigh in the movant's favor, the movant's success on the merits must be "at least ... sufficiently likely to support the kind of relief it requests."

*Youngblade*, 878 F.Supp. at 1247 (citations omitted).

*Branstad I*, 118 F.Supp.2d at 939. This court also added the following concerning the meaning of "likelihood of success" in the context of an action for judicial review of agency determinations:

In the present case, the weight of the "likelihood of success on the merits" factor depends upon the likelihood that the Branstads can show that the USDA's "final determination" ... is arbitrary

and capricious, or otherwise contrary to law. *See* 5 U.S.C. § 706; *see also Barthel*, 181 F.3d at 937; *Downer v. United States*, 97 F.3d 999, 1002 (8th Cir.1996) (in an action for judicial review of administrative determinations concerning wetlands under the Swampbuster Act, the court concluded that "[o]ur review ... is limited to a determination of whether the decisions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' ") (quoting 5 U.S.C. § 706(2)(A)). "This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Id.* (quoting *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

More specifically,

To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). If the agency itself has not provided a reasoned basis for its action, the court may not supply one. *Id.*

Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations. *Id.* This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. *Marsh,* 490 U.S. at 377–78, 109 S.Ct. at 1861–62. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 378, 109 S.Ct. at 1861.

*Downer,* 97 F.3d at 1002.

*Branstad I,* 118 F.Supp.2d at 939–40.

#### b. B & D's likelihood of success

In this case, as to likelihood of success on the merits, B & D contends that it is likely to succeed on its argument that the USDA arbitrarily failed to consider whether any wetland conversion would have only "minimal effect" and arbitrarily denied equitable relief from ineligibility for benefits. However, the USDA contends that B & D has no real likelihood of success on the merits, because B & D abandoned its administrative appeal of the underlying 1999 wetland determination, and concedes that it subsequently removed brush from the identified wetlands, which constitutes a "conversion" of those wetlands.[3]

As the Secretary asserts in her Supplemental Brief, in which she belatedly addresses this court's *Branstad* line of cases, B & D's prior attempt to pursue an admin-istrative appeal of the 1999 wetland determination, including a withdrawal of that administrative appeal, *at the time that the determination was made,* appears to distinguish this case from the circumstances presented in the *Branstad* cases. In the *Branstad* cases, the producers challenged prior wetlands determinations on administrative appeals of determinations that they had "converted" those wetlands, but they had never before challenged the wetlands determinations, nor had the producers who owned the tracts in question at the time that the prior wetlands determinations were made. Nevertheless, that distinction appears to the court to be of no moment in the face of B & D's arguments for relief from the agency determination that it improperly "converted" wetland that are independent of whether or not the 1999 wetland determination was correct.

■ Rather, the court is persuaded, first, that B & D has shown sufficient support, under governing law, for its position that the USDA arbitrarily failed to consider whether or not any "conversion" of the wetland in question had only a "minimal effect." Somewhat more specifically, B & D has made sufficient showing for purposes of its motion for a preliminary injunction that the Hearing Officer could not properly consider whether removal of woody vegetation, standing alone, is enough to result in the "conversion" of a wetland under 7 C.F.R. § 12.4(a)(3) *unless* the Hearing Officer had first determined that the purported "conversion" would have more than a "minimal effect" on the wetland functions and values under 7 C.F.R. § 12.5(b)(1)(v). The regulation for "determination of ineligibility," 7 C.F.R. § 12.4, provides in pertinent part that, "*[e]xcept* as provided in § 12.5, a person

---

**3.** In support of its contention that B & D lacks the requisite likelihood of success on the merits, the Secretary also argued that the court cannot properly enjoin the Commodity Credit Corporation to make payments for which the plaintiff should not be eligible, but that argument was rejected above.

shall be ineligible for all or a portion of USDA program benefits listed in this section if" the person is found to have committed specified violations of wetlands protection provisions. *See* 7 C.F.R. § 12.4(a) (emphasis added). The cited regulation creating "exemptions," 7 C.F.R. § 12.5, provides, in pertinent part, as follows:

(b) Exemptions for wetlands and converted wetlands—

(1) General Exemptions. A person shall not be determined to be ineligible for program benefits under § 12.4 as the result of the production of an agricultural commodity on converted wetland or the conversion of wetland if:

\* \* \* \* \* \*

(v) NRCS has determined that the actions of the person with respect to the conversion of the wetland or the combined effect of the production of an agricultural commodity on a wetland converted by the person or by someone else, individually and in connection with all other similar actions authorized by NRCS in the area, would have only a minimal effect on the wetland functions and values of wetlands in the area[.]

7 C.F.R. § 12.5(b)(1)(v). Because the record here indicates that the Hearing Officer made the "conversion" determination without considering this "minimal effects" exemption, notwithstanding that B & D had, at the time, identified sufficient evidence that any effects would have been "minimal," B & D has sufficient likelihood of success on the merits of its contention that the "conversion" determination was arbitrary and capricious to sustain its motion for a preliminary injunction.

Similarly, B & D has sufficient likelihood of success on the merits of its contention that the Acting Director's conclusion that equitable relief was not warranted under

the circumstances was arbitrary and capricious. B & D had put forward sufficient evidence in the administrative record that it believed that it had the District Conservationist's permission to remove woody vegetation, notwithstanding that the Hearing Officer determined that any such permission actually pertained to *other* parts of the tract in question. Some confusion about the scope of the District Conservationist's permission is apparent from the record. This view of the record is reinforced by the court's belief that common sense alone would have prevented a producer from intentionally and improperly removing woody vegetation from so small an area of designated wetland, a mere 0.9 acres, at the risk of losing such substantial farm program benefits, amounting to more than $71,000 in benefits from 2000 to 2002, and doubtless many more thousands of dollars thereafter. Moreover, the Acting Director's denial of equitable relief, in the form of a "good faith" restoration agreement, for example, smacks of absurdity, when the USDA has not countered B & D's assertions that any "conversion" was based on a good faith mistake about the scope of the District Conservationist's permission; that less than $1,000 in materials and expenses would be required to restore the "grubbed" vegetation; that there would have been, at most, a very small "loss" of wetland function resulting from the "conversion" of only 0.9 acres of wetland; and that any supposed "loss" is called even further into doubt by the effects of repairs to an adjacent drainage system on property of another producer.

Thus, the court concludes that B & D has shown sufficient likelihood of success on the merits of its underlying action for judicial review to support a preliminary injunction on enforcement actions that it seeks here.[4]

---

4. The court's conclusion that B & D has shown sufficient likelihood of success on the

merits as to some of its contentions, but not

### 2. *Irreparable harm*

As this court explained in *Branstad I,*

" 'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.' " *Bandag, Inc.,* 190 F.3d at 926 (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). "Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Id.; Adam–Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996) (" '[T]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.' ") (quoting *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987)). Various considerations may be relevant to a determination of "irreparable harm." For example, a movant's delay in seeking relief or objecting to the actions the movant seeks to enjoin "belies any claim of irreparable injury pending trial." *Hubbard Feeds v. Animal Feed Supplement,* 182 F.3d 598, 603 (8th Cir.1999). Moreover, an adequate showing of "irreparable harm" cannot be something that has never been the focus of the underlying lawsuit. *See United States v. Green Acres Enters., Inc.,* 86 F.3d 130, 133 (8th Cir.1996). A sufficient showing on this factor can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op.,* 28 F.3d at 1473. Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue. *See Frank B. Hall & Co. v. Alexander & Alexander,*

*Inc.,* 974 F.2d 1020, 1025 (8th Cir.1992). Even where money damages are available to compensate for some of the harm to the movant, other less tangible injuries cannot be so easily valued or compensated, so that the availability of money damages that do not fully compensate the movant do not preclude a preliminary injunction. *Glenwood Bridge,* 940 F.2d at 371–72.

*Branstad I,* 118 F.Supp.2d at 941–42.

B & D contends that there is a threat of irreparable harm from imminent enforcement action by the USDA, in the form of a demand for repayment of *past* farm program benefits and decertification of eligibility for *future* benefits, which the plaintiff contends could put it out of the farming business. In response, the USDA focuses only on the purported harm from loss of *future* benefits, arguing that there is no threat of irreparable harm, because the delay in payment of *future* benefits until such time as the court might determine that the underlying agency determination was wrong does not constitute the necessary threat.

Here, the relief that B & D seeks in its motion for a preliminary injunction involves the same focus as B & D's underlying lawsuit, *see Green Acres Enters., Inc.,* 86 F.3d at 133, relief from a determination that B & D improperly converted wetland, even if the nature of the relief sought in the motion for a preliminary injunction is somewhat different, cessation of enforcement actions. Moreover, contrary to the Secretary's contentions, B & D has shown that legal remedies would be

---

others, and has not considered each and every one of B & D's contentions of error on the part of the USDA, does not suggest that contentions upon which the court did not rely as demonstrating likelihood of success are without merit, or that those upon which the court did rely are certain to prevail upon fuller

consideration on the merits. *See Camenisch,* 451 U.S. at 395, 101 S.Ct. 1830 ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."); *see also supra,* Section I.A.

entirely insufficient to recompense B & D for the damage inflicted by improper USDA enforcement action. *See Bandag, Inc.*, 190 F.3d at 926; *Baker Elec. Co-op.*, 28 F.3d at 1473. Even assuming that B & D could be recompensed for being forced to disgorge farm benefit program payments already received and might ultimately receive benefits improperly held up in the interim while this action proceeds, if B & D is successful, B & D cannot be fully compensated by damages for the loss of the intangible value of its farming operation and the intangible costs of its possible bankruptcy as a result of such disgorgement of past benefits or loss of future benefits. *See Glenwood Bridge*, 940 F.2d at 371–72. Indeed, B & D has already suffered some harm in the form of an inability to meet certain payments due November 1, 2002, because it cannot take advantage of certain farm program benefits. Moreover, permitting enforcement action to proceed now would deprive B & D of the benefits of the opportunity to complete a Wetland Restoration Agreement, even if the court determines that the agency's decision that wetland was improperly converted is sustained in this action, but the court also determines that the agency arbitrarily denied B & D equitable relief, such that B & D would be deprived of the opportunity, under governing law, to obtain reinstatement of benefits and to continue its farming operation. Finally, the court concludes that, unless enforcement is enjoined, B & D faces the threat of irreparable harm in the loss of the value of its right to judicial review of the USDA's "final" decision.

Thus, this factor also weighs strongly in favor of granting the preliminary injunctive relief sought by B & D in this case.

### 3. Balance of harms

As this court also explained in *Branstad I,*

The next factor in the *Dataphase* analysis, the "balance of harms," requires the court to consider "the balance between the harm [to the movant] and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir.1994). Whereas "irreparable harm" focuses on the harm or potential harm to the plaintiff of the defendant's conduct or threatened conduct, *Dataphase*, 640 F.2d at 114, the "balance of harm" analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public, as well. *Id.; see also Glenwood Bridge*, 940 F.2d at 372. Thus, an illusory harm to the movant will not outweigh any actual harm to the nonmovant. *Frank B. Hall*, 974 F.2d at 1023. What must be weighed is the threat to each of the parties' rights and economic interests that would result from either granting or denying the preliminary injunction. *See Baker Elec. Co-op.*, 28 F.3d at 1473. Another consideration is whether the nonmovant has already voluntarily taken remedial action, which either eliminated or reduced the harm to the movant, or showed that such remedial action did not harm the nonmovant. *See Heather K.*, 887 F.Supp. at 1260.

*Branstad I,* 118 F.Supp.2d at 942–43.

B & D argues that the balance of harms also weighs in its favor, because the woody vegetation has already been removed, so that no further "conversion" will occur if the injunction is granted and that, if B & D is unsuccessful on the merits of its Complaint, it will have no choice but to attempt to restore the wetland. B & D argues that such restoration can be done for the minimal cost of about $1,000. Moreover, B & D argues, even if the

USDA pays out further farm program benefits during the pendency of this judicial review action, if B & D does ·not prevail, it will be required to repay those benefits. The Secretary now argues that B & D can offset any potential harm by entering into a "good faith" restoration agreement—although it previously denied equitable relief—but that the USDA should not be forced to pay unearned benefits, nor should the public be forced to suffer the unlawful destruction of wetlands.

■ As pointed out above, the threatened harm to B & D from the USDA's enforcement actions is far from "illusory." *See Frank B. Hall,* 974 F.2d at 1023. Thus, there must be something significant on the other side of the scales for this factor to weigh against the issuance of an injunction. The court finds that there is no such significantly weighty harm to the USDA or the public interest. First, as mentioned above, any actual harm to the USDA—that is, to the USDA's interest in wetland protection and not paying benefits to persons who violate wetland protection regulations—is slight, because the "converted" wetland in question is small, B & D has made a sufficient preliminary showing that any conversion would have minimal effect in light of the nature of the alleged "conversion" and the effects of an adjacent drainage system on land of another producer, and the USDA has the means to recover improperly paid benefits, if the USDA ultimately prevails. Moreover, B & D has made a sufficient preliminary showing that any damage to the wetland can be repaired reasonably easily and inexpensively, should the decision in this ·action ultimately go against it. Thus, as in *Branstad I,* the potential for long term harm to wetlands is insufficient to bar an injunction when balanced against the almost certain and permanent disaster that loss of farm program benefits, and repayment of past benefits, would be to B & D. *See Branstad*

*I,* 118 F.Supp.2d at 943 (citing *Baker Elec. Co-op.,* 28 F.3d at 1473, for consideration of the rights and economic interests of the parties on this factor in the *Dataphase* analysis). Moreover, it is also true here, as in *Branstad I,* that the preliminary injunction would only maintain the *status quo,* the Secretary's arguments to the contrary not being persuasive, and B & D should not be effectively deprived of its right to judicial review by allowing enforcement action to proceed. *Id.*

Thus, this factor also weighs in favor of the issuance of a preliminary injunction.

### 4. The public interest

Finally, the court turns to the "public interest" factor in the *"Dataphase* analysis." *See Branstad I,* 118 F.Supp.2d at 943. As this court explained in *Branstad I,*

> [C]onsideration of the "public interest" factor has frequently invited courts to indulge in broad observations about conduct that is generally recognizable as costly or injurious. *See Heather K.,* 887 F.Supp. at 1260. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, *see id.,* a preference for enjoining inequitable conduct, *see id.* at 1260 n. 16, and the "public's interest in minimizing unnecessary costs" to be met from public coffers. *Baker Elec. Co-op.,* 28 F.3d at 1474.

*Branstad I,* 118 F.Supp.2d ·at 943.

■ In its *Branstad* cases, including its disposition of those cases on the merits, *see Branstad v. Veneman,* 212 F.Supp.2d 976 (N.D.Iowa 2002) (*Branstad III* ), this court discussed in considerable detail the public interest embodied in the Swampbuster Act. As in *Branstad II,* "[t]he court by no means denigrates the importance of and public· interest in prevention of wetlands

conversion, as embodied in the 'Swampbuster' Act." *Branstad II,* 145 F.Supp.2d at 1025. Nevertheless, as in the *Branstad* cases, "this final *'Dataphase* factor' still weighs in favor of issuance of a preliminary injunction." *Branstad II,* 145 F.Supp.2d at 1025. As this court explained in *Branstad II,*

> Issuance of a preliminary injunction will simply maintain the status quo, without imposing additional environmental damage that cannot, to some extent, be ameliorated if [B & D] ultimately [is] compelled to complete [a] restoration agreement, whereas the harm to [B & D] of permitting enforcement action to go forward is irreparable. There is also a public interest in proper application of the Swampbuster Act and the urgency of the interests the Act was designed to protect cannot justify arbitrary and capricious agency action or failure to maintain the status quo while judicial review of agency action is undertaken.

*Branstad II,* 145 F.Supp.2d at 1024. Therefore, B & D has not only satisfied this final factor for issuance of a preliminary injunction, but all of the other *"Dataphase* factors."

The court, therefore, concludes that a preliminary injunction on enforcement action by the USDA should issue in this case.

### D. The Bond Requirement

B & D recognizes that subsection (c) of Rule 65 of the Federal Rules of Civil Procedure requires the movant to give security for the issuance of a preliminary injunction. *See* FED. R. CIV. P. 65(c). As this court explained in *Branstad I,* "The bond posted under Rule 65(c) 'is a security device, not a limit on the damages the [USDA] defendants may obtain against [B & D] if the facts warrant such an award.'" *Branstad I,* 118 F.Supp.2d at 944 (quoting *Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.,* 130 F.3d 1305, 1309 (8th Cir.1997)). Furthermore,

The Eighth Circuit Court of Appeals has warned that, "[a]lthough we allow the district court much discretion in setting bond, we will reverse its order if it abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determinations." *Hill v. Xyquad, Inc.,* 939 F.2d 627, 632 (8th Cir.1991) (citing *Rathmann Group v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir.1989)).

*Branstad I,* 118 F.Supp.2d at 944.

Based on a calculation of the per day interest for six months on the farm program benefits that the USDA has already demanded that B & D repay and any additional benefits that the USDA may pay out during the pendency of this action, B & D estimates that the USDA's "damages" from an improvidently granted preliminary injunction would be about $456.25. B & D, therefore, suggests that a bond in the amount of $1,000 would be reasonable. The Secretary makes no counterargument.

■ While instructive, the court finds that B & D's calculation is not complete. The court believes that it is also prudent, under the circumstances, for the determination of the proper amount of a bond to take into account reasonable estimates of the costs of restoring the wetland in question, if they are ultimately found to have been improperly converted, to as much of their wetland function as possible. This calculation would properly "secure" the USDA's and the public's interest in wetland protection and restoration. However, this calculation, too, seems to suggest that a bond in the amount of $1,000 would be reasonable, because that is the cost that B & D estimates that it would incur in "restoring" the 0.9 acres of "converted" wetland, and the Secretary has offered no contrary calculation. Moreover, because B & D has made a sufficient preliminary showing that any "conversion" of wetlands

had at most a "minimal effect," it is unnecessary to attempt to quantify any ongoing harm to the "converted" wetland, in monetary terms, during the pendency of this action for judicial review.

Therefore, the court agrees that the preliminary injunction should issue upon the posting by B & D of bond in the amount of $1,000.

### III. CONCLUSION

The court concludes that B & D has satisfied each of the *"Dataphase* factors" for issuance of a preliminary injunction under the circumstances presented here. Furthermore, the court finds no other impediment to the issuance of such an injunction, and that such an injunction should issue upon the posting of bond in the amount of $1,000.

Therefore, B & D's September 20, 2002, Motion for Preliminary Injunction is **granted**. A preliminary injunction shall issue in accordance with 5 U.S.C. § 705, Rule 65 of the Federal Rules of Civil Procedure, and this order.

**IT IS SO ORDERED.**

### PRELIMINARY INJUNCTION

**WHEREAS,** this matter came before the court on the plaintiff's September 20, 2002, Motion For Preliminary Injunction,

**AND WHEREAS,** pursuant to 5 U.S.C. § 705 and Rule 65 of the Federal Rules of Civil Procedure, the court finds that enforcement actions of the United States Department of Agriculture, or any of its subdivisions or administrative departments, agents, or officials, pursuant to the final determination of the agency on March 27, 2002, by William A. Crutchfield, Acting Director of Review, NAD, concerning tract # 1653 would impose irreparable harm or injury or the threat of such irreparable harm or injury upon the plaintiff herein, and upon further consideration of all other relevant factors,

**ANN VENEMAN,** Secretary of the United States Department of Agriculture, is hereby **preliminarily enjoined** from pursuing, instituting, continuing, or completing any and all enforcement actions, including, but not limited to, certification of the ineligibility of the plaintiff or any of its shareholders for farm program benefits pursuant to the Food Security Act, 16 U.S.C. §§ 3821–3824, as amended, until such time as this preliminary injunction is dissolved or vacated, by this court or a reviewing court.

This preliminary injunction shall be binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order.

This preliminary injunction shall issue upon the posting by the plaintiff herein of a bond, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure and such other rules, regulations, or statutes as shall apply, in the sum of one thousand dollars ($1,000).

**IT IS SO ORDERED.**